VALERIO v. STATE

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-04-534-CR

DONALDO ENRIQUE VALERIO APPELLANT

V.

THE STATE OF TEXAS STATE

------------

FROM THE 213TH
 DISTRICT COURT OF TARRANT COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

Appellant Donaldo Enrique Valerio appeals from his conviction of indecency with a child.  Appellant was charged with one count of aggravated sexual assault of a child and two counts of indecency with a child.  A jury found him not guilty of aggravated sexual assault and guilty on both counts of indecency with a child.  The jury assessed his punishment at six years’ imprisonment for one count of indecency with a child by contact and ten years’ imprisonment, probated, for one count of indecency with a child by exposure.  The trial court sentenced him accordingly.  In one issue, Appellant argues that the evidence is factually insufficient to support the convictions.  We affirm.

Background Facts

Appellant is the biological father of the victim, R.V., and is married to R.V.’s mother, Yvonne Valerio.  In February 2004, R.V. and her sister were fighting.  Appellant and R.V. then had an argument because Appellant told R.V. to stop hitting her sister.  Afterwards, R.V. told her mother that Appellant had previously touched her in a sexual way.  At trial, evidence against Appellant came in the form of testimony from R.V., Yvonne Valerio, Araceli Desmarais, the sexual assault exam nurse, and the detectives who investigated the allegations and spoke with Appellant regarding the alleged sexual abuse.  Appellant’s statement to police and his handwritten statement admitted into evidence controvert the allegations of sexual abuse made against him by his daughter.  

R.V.’s testimony

R.V. testified that when she was six or seven years old, she was sexually abused by her father.  Appellant and R.V. were home alone when Appellant told his daughter to go into her parents bedroom and “to take [her] pants off.”   She then stated that “he put his private area on [hers].”  On another occasion, R.V. stated, “[h]e licked [her] private area.”  R.V. testified that she did not tell her mother because she was afraid.  When R.V. was approximately twelve years old, she told her mother that her father had touched her in a sexual way.  On cross-examination, R.V. admitted that she told her mother about what happened after she had an argument with Appellant.  R.V. also testified that when she told her mother about the sexual abuse, she was angry with Appellant for disciplining her for fighting with her sister. 

Yvonne Valerio’s testimony
 

Yvonne testified that R.V. told her that Appellant had touched her in a sexual way.  R.V. told her mother that it had only happened one time, but Yvonne testified that she had her doubts that it only happened once.  However, she testified that she believed her daughter was telling the truth about the sexual abuse.  She stated that after R.V. told her about the abuse, she asked questions about what had happened and the questions were ones that only required a “yes” or “no” answer. 

Araceli Desmarais’s testimony

The State also presented testimony from Desmarais, who had examined R.V. shortly after the allegations of sexual abuse had been reported.  Desmarais testified about her exam and interview of R.V.  She stated that the exam results were “normal,” but that she did not expect to see any injury because “she denied him penetrating into her hymen.  She described oral copulation, which is not going to leave any injury.  Plus it happened when she was five and I believe she was nine--nine or ten when I saw her.
(footnote: 2)  So it had been a long time.” Desmarais testified that R.V. told her that the sexual abuse happened about three times when she was five years old. 

Detective Ermatinger’s Testimony 
 

Detective Ermatinger with the Arlington Police Department testified that she was contacted by a CPS investigator regarding the sexual abuse of R.V. CPS had given Ermatinger a video tape of an interview with R.V.  After she reviewed the tape, Ermatinger contacted Yvonne.  She testified that there was  a language barrier because Yvonne spoke Spanish and Ermatinger did not, so Myrna Ramirez, Ermatinger’s secretary, interpreted for Ermatinger.  Eventually, Yvonne met with Ermatinger at her workplace, the Alliance for Children, located at 1320 West Abram, gave a statement to the police.  Ermatinger contacted Detective Frias, who was fluent in Spanish, to assist her with interviewing Appellant. 

Detective Frias’s Testimony 

Detective Fias testified that he and Ermatinger went to Appellant’s place of employment and that he read the 
Miranda
(footnote: 3) warnings to Appellant in Spanish.  When Fias told Appellant that the police were investigating allegations that he had fondled his daughter several years earlier, he denied that this had occurred and could not understand why “a child would make something like this up.” Appellant’s handwritten statement was admitted into evidence and read to the jury, in Spanish and then translated into English.  It stated:

One time she was with her buttocks up and I told her that that was not good because she was—because what she was doing—because what she was doing was not right.  And then 15 days—or after 15 days she went to take a bath and she came out and called me—and [I am not sure if it says I was or she was—I think it was] I was lying down in the—on the mattress where her mother and I sleep.  And she was lying down holding her private parts and she asked me if I could make her a woman.  And then I told her that why would she say that.  And she said that because they had already touched her in Maryland.  And I then told her that that was not good and that no one should touch her there, not with—not with—with a penis or with the hand unless she decides, and that—and I had touched her part but not sexually.

Standard of Review
 

In reviewing the factual sufficiency of the evidence to support a conviction, we are to view all the evidence in a neutral light, favoring neither party.  
See Zuniga v. State
, 144 S.W.3d 477, 481 (Tex. Crim. App. 2004).  The only question to be answered in a factual sufficiency review is whether, considering the evidence in a neutral light, the fact finder was rationally justified in finding guilt beyond a reasonable doubt.  
Id
. at 484.  There are two ways evidence may be factually insufficient:  (1) the evidence supporting the verdict or judgment, considered by itself, is too weak to support the finding of guilt beyond a reasonable doubt; or (2) when there is evidence both supporting and contradicting the verdict or judgment, weighing all of the evidence, the contrary evidence is so strong that guilt cannot be proven beyond a reasonable doubt.  
Id
. at 484-85.  “This standard acknowledges that evidence of guilt can ‘preponderate’ in favor of conviction but still be insufficient to prove the elements of the crime beyond a reasonable doubt.”  
Id
. at 485.  In other words, evidence supporting a guilty finding can outweigh the contrary proof but still be insufficient to prove the elements of an offense beyond a reasonable doubt.  
Id
.   In performing a factual sufficiency review, we are to give deference to the fact finder’s determinations, including determinations involving the credibility and demeanor of witnesses.  
Id.
 at 481; 
Cain v. State
, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997).  We may not substitute our judgment for that of the fact finder’s.  
Zuniga, 
144 S.W.3d at 482.  

A proper factual sufficiency review requires an examination of all the evidence.  
Id
. at 484, 486-87.  An opinion addressing factual sufficiency must include a discussion of the most important and relevant evidence that supports the appellant’s complaint on appeal.  
Sims v. State
, 99 S.W.3d 600, 603 (Tex. Crim. App. 2003).

Factual Sufficiency

Appellant contends that the evidence at trial was factually insufficient to support his convictions for indecency with a child.  Specifically, he argues that the allegations R.V. made against him were inconsistent and did not relate specific details of what occurred.  Appellant argues that considering that R.V. made the outcry six to eight years after the alleged events occurred when she was angry at Appellant, and considering the numerous inconsistencies in R.V.’s explanation of the sexual abuse, her credibility is questionable.  

The weight to be given conflicting testimony lies within the sole province of the jury, and the reviewing court must show deference to the jury’s determination.  
Cain
, 958 S.W.2d at 408-09.  A decision is not clearly wrong and unjust merely because the jury resolved inconsistent evidence in favor of the State.  
Id
. at 408.  Appellant’s challenge to the factual sufficiency of the evidence is nothing more than an attack on the credibility determination made by the jury.  We do not resolve any conflict of fact or assign credibility to the witnesses, as it was the function of the trier of fact to do so.  
See Adelman v. State
, 828 S.W.2d 418, 421 (Tex. Crim. App. 1992); 
Matson v. State
, 819 S.W.2d 839, 843 (Tex. Crim. App. 1991).  We may disagree with the jury’s determination only when the record indicates such a step is necessary to “arrest the occurrence of a manifest injustice.”  
Johnson v. State
, 23 S.W.3d 1, 9 (Tex. Crim. App. 2000).  Here, viewing the evidence in a neutral light, we cannot say the jury’s verdict was clearly wrong or manifestly unjust.  Accordingly, we overrule Appellant’s sole issue and affirm the trial court’s judgment.       

BOB MCCOY

JUSTICE

PANEL B: LIVINGSTON, DAUPHINOT, and MCCOY, JJ.

DO NOT PUBLISH

Tex. R. App. P.
 47.2(b)

DELIVERED:  August 4, 2005

FOOTNOTES
1:
See
 
Tex. R. App. P.
 47.4.

2:
We recognize that Desmarais testified that she examined R.V. when she was nine or ten years old. However, the record reflects that at the time of trial, October 2004, R.V. was thirteen years old, and she was twelve years old when she told her mother about the sexual abuse.

3:
Miranda v. Arizona
, 384 U.S. 436, 86 S. Ct. 1602 (1966).